UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____-CIV-_____/_____

JERMAINE KENNEDY, an individual,

     Plaintiff,

vs.

FIRSTSERVICE RESIDENTIAL, INC., a Delaware Corporation,
and FIRSTSERVICE RESIDENTIAL FLORIDA, INC.,
a Florida Corporation,

     Defendants.

_____/

## COMPLAINT

1.     Plaintiff, JERMAINE KENNEDY (hereinafter referred to as "Plaintiff" and "KENNEDY"), was an employee of Defendants, FIRSTSERVICE RESIDENTIAL, INC., a Delaware Corporation, and FIRSTSERVICE RESIDENTIAL FLORIDA, INC., a Florida Corporation (collectively referred to as "FIRSTSERVICE RESIDENTIAL" and "Defendants"), and Plaintiff brings this action against Defendants for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*., as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553 (the "ADAAA"), and the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601 *et seq.*

2.     KENNEDY is an individual residing in Miami-Dade County, Florida, within the jurisdiction of this Court.

3.     Defendants, FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC., have at all times material to this Complaint owned and operated a property management business that provides property management services to, inter alia, low,

mid, and high-rise condominium buildings, home owners associations, and master planned communications, with Defendants' offices located at 1855 Griffin Road, Suite A-330, Dania Beach, Florida and 2950 North 28th Terrace, Hollywood, Florida in Broward County, within the jurisdiction of this Court.

4.      Jurisdiction is conferred on this Court by  28 U.S.C. §1332 & §1337, 29 U.S.C. §12101, and 29 U.S.C. §2601.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because all of the events, or a substantial part of the events, giving rise to this action, occurred in Broward and Miami-Dade County, Florida, within the jurisdiction of the United States District Court for the Southern District of Florida.

6.      At all times material to this action, KENNEDY was an "employee" of FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC. within the meaning of the ADAAA, 42 U.S.C. §12111(4),

7.      At all times material to this action, KENNEDY  was an "aggrieved person" within the meaning of the FCRA, F.S. §760.02(10).

8.      At all times material to this action, FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC. constituted an "employer" and/or joint employer of KENNEDY within the meaning of the ADAAA, 42 U.S.C. §12111(5), and the FMLA, 29 U.S.C. §2611(4), §2612, §2614(a), §2615(a)(1) and §2617(a), because Defendants were a business engaged in interstate commerce and had Fifty (50) or more employees in each of Twenty (20) or more calendar weeks in the current or preceding year.

9.      In approximately January 2018, Defendants hired KENNEDY as an "Overnight Operations Manager" based upon an hourly rate of approximately $13.00/hour.

10.    In or around August 2019, KENNEDY injured his lower back and right hip in a car accident and Plaintiff was subsequently out of work on medical leave under the Family and Medical Leave Act for approximately eight (8) weeks during part of September 2019 and all of October 2019 before returning to work with Defendants in around November 2019.

11.    Between approximately January 2018 and early January 2020, KENNEDY was assigned by Defendants to work as the "Overnight Operations Manager" at the "Biscayne Beach Condominium" located at 2900 NE 7th Avenue, Miami, Florida 33137 on a shift between approximately 10:45 p.m. and 7:15 a.m., with Plaintiff's primary duties consisting of walking the building/garage and common areas and checking for any problems to be reported and addressed such as, for example, water leaks and noise complaints.

12.    At all times material to this action between approximately August 2018 and January 2020, KENNEDY was an individual with one or more serious health conditions, including but not necessarily limited to a chronic kidney disorder or disease,[1] which affected, *inter alia*, sleep apnea that causes a loss of oxygen, high blood pressure, severe headaches, and problems with the functioning of KENNEDY's kidneys.

13.    At all times material to this action between approximately August 2018 and January 2020, KENNEDY suffered from a "physical impairment" within the meaning of the ADA, 29 C.F.R. §1630.2(h)(1), as a result of KENNEDY's chronic kidney disorder or disease and resulting medical issues, including but not limited to, Plaintiff suffering from one or more physiological disorders or conditions affecting one or more of KENNEDY's major bodily functions, including but not limited to Plaintiff's kidneys, and Plaintiff's body systems including but not necessarily limited to KENNEDY's urinary/renal and cardiovascular systems.

---

[1] KENNEDY was diagnosed with a chronic kidney condition in or around November 2016.

14.     KENNEDY worked more than 1,250 hours for Defendants during the twelve (12) month period leading up to January 2020, such that KENNEDY was, at all times material to this action, an eligible employee under the FMLA, 29 U.S.C. §2611(2), §2612, §2614(a), §2615(a)(1), and §2617(a).

15.     KENNEDY's chronic kidney disorder and/or disease and medical conditions constitute one or more "serious health conditions" within the meaning of 29 U.S.C. §2612(a)(1)(D).

16.     KENNEDY was eligible for and entitled to FMLA leave in 2020 pursuant to 29 U.S.C. §2612(a)(1)(D) because of Plaintiff's serious health conditions.

17.     At all times material to this action, KENNEDY satisfactorily performed his essential job duties for FIRSTSERVICE RESIDENTIAL.

18.     On Wednesday, January 1, 2020, during KENNEDY's shift for FIRSTSERVICE RESIDENTIAL that started the prior evening, December 31, 2019, Plaintiff became ill and went to the emergency room at Homestead-Baptist Hospital because of KENNEDY's chronic kidney disorder or disease and medical conditions, which include sleep apnea that causes a loss of oxygen, high blood pressure, severe headaches, and problems with the functioning of KENNEDY's kidneys.

19.     KENNEDY called FIRSTSERVICE RESIDENTIAL on January 1, 2020 in order to notify Defendants that Plaintiff had to go to the emergency room because of severe high blood pressure and his chronic kidney disorder, at which time KENNEDY's supervisor, Defendants' Operations Manager, Timothy Lee, was out, so Plaintiff informed Harold, an "Operations Manager" on duty, that KENNEDY was at the hospital for severe high blood pressure.

20.     KENNEDY was ultimately admitted to Homestead-Baptist Hospital on January 1, 2020 because of severe high blood pressure and, *inter alia*, and tests including bloodwork which showed that KENNEDY's kidneys may be failing.

21.     After KENNEDY was admitted to Homestead-Baptist Hospital, Plaintiff informed Timothy Lee at FIRSTSERVICE RESIDENTIAL on the afternoon of January 1, 2020 that Plaintiff would be unable to work for two (2) days because KENNEDY was admitted to the hospital.

22.     On or around Thursday, January 2, 2020, KENNEDY was discharged from Homestead-Baptist Hospital.

23.     However, KENNEDY began experiencing physical problems, including chest pain, while Plaintiff was at home over the weekend, as a result of which KENNEDY first went to an Urgent Care on Sunday, January 5, 2020, following which Plaintiff was sent to West Kendall Baptist Hospital on January 5th, where KENNDY was admitted to the hospital and underwent further bloodwork and testing.

24.     On the morning of Monday, January 6, 2020, KENNEDY called his supervisor, Timothy Lee, and notified FIRSTSERVICE RESIDENTIAL that Plaintiff was again hospitalized because of continuing, serious medical problems.

25.     Significantly, Timothy Lee told KENNEDY on the morning of January 6, 2020 "not to worry" about Plaintiff's job because "the job will be here," while Mr. Lee also told KENNEDY to just "get well."

26.     On the morning on Tuesday, January 7, 2020, KENNEDY notified Timothy Lee that Plaintiff would be undergoing vascular surgery for KENNEDY's kidney disorder and Plaintiff would be absent from work for a few days.  In this regard, KENNEDY asked Mr. Lee on January

7th about Plaintiff taking medical leave from his employment with FIRSTSERVICE RESIDENTIAL —or any other type of leave as a result of Plaintiff's serious medical condition— but Mr. Lee responded that he needed to check with Defendants' Association Property Manager, Sean Estevez, since KENNEDY was having surgery for a serious illness.

27.      However, a few hours later on January 7, 2020, Sean Estevez called KENNEDY and notified Plaintiff that he was being fired by FIRSTSERVICE RESIDENTIAL because Plaintiff had previously been out on FMLA leave in 2019 and Plaintiff was now sick again, as part of which Mr. Estevez said that Defendants needed "someone we can rely on."

28.      On Wednesday, January 8, 2020, KENNEDY had AV (arteriovenous) fistula surgery at West Kendall Baptist Hospital, during which surgery a vein was connected, through KENNEDY's left arm, to one of KENNEDY's arteries for Plaintiff's chronic kidney disorder.

29.      Following KENNEDY's surgery, further bloodwork on Plaintiff conducted in early January 2020 showed that KENNEDY did not require dialysis at that time to ensure the proper functioning of Plaintiff's kidneys.

30.      On Thursday, January 9, 2020, KENNEDY was discharged from West Kendall Baptist Hospital, at which time Plaintiff was fully capable of performing his essential duties for FIRSTSERVICE RESIDENTIAL as an "Overnight Operations Manager."

31.      When KENNEDY notified FIRSTSERVICE RESIDENTIAL in January 2020 of the reasons for Plaintiff's need to take time off from work in connection with his chronic kidney disorder and surgery, KENNEDY provided Defendants with sufficient information for FIRSTSERVICE RESIDENTIAL to understand that KENNEDY needed and was entitled to leave for FMLA-qualifying reasons in accordance with the FMLA, 29 C.F.R. §825.302.

32.     However, although FIRSTSERVICE RESIDENTIAL was aware in January 2020 of the facts and circumstances surrounding KENNEDY's need for medical leave for FMLA-qualifying reasons—or at a minimum, that Plaintiff's need for time off "may be for" an FMLA-qualifying reason—Defendants failed to notify KENNEDY of his eligibility for this time off to be FMLA-protected leave, as required by the FMLA, 29 C.F.R. §825.300(b)(1), as a result of which Defendants interfered with KENNEDY's right to FMLA-protected leave in January 2020.

33.     FIRSTSERVICE RESIDENTIAL's termination of KENNEDY's employment in January 2020 was discriminatory and retaliatory as a result of KENNEDY taking time off for one or more serious health conditions and/or was because of KENNEDY's actual or perceived disability/handicap, in violation of both the ADA and FMLA.

## EXHAUSTION OF ADMINISTRATVIE REMEDIES

34.     On February 14, 2020, KENNEDY filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) and Florida Commission for Human Relations (FCHR), EEOC Charge No. 510-2020-02551, against FIRSTSERVICE RESIDENTIAL alleging that he had been subjected to disability/handicap discrimination and retaliation in violation of the Americans with Disabilities Act and the Florida Civil Rights Act.  A copy of KENNEDY's Charge of Discrimination is attached hereto as Exhibit A.

35.     On or around April 17, 2020, the EEOC issued a Dismissal and Notice of Suit Rights to KENNEDY in connection with Charge No. 510-2020-02551.  See Exhibit B.

36.     KENNEDY's Complaint in this action is being filed with the Court on April 22, 20120 within Ninety (90) days of KENNEDY's receipt on or around April 17, 2020 of the EEOC's Dismissal and Notice of Suit Rights for Charge No. 510-2020-02551.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

Plaintiff, JERMAINE KENNEDY, reasserts and reaffirms the allegations of Paragraphs 1 through 36 as if fully set forth herein and further states that this is an action against FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC. for disparate treatment and disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553. ("ADAAA").

37.    The Americans with Disabilities, the ADA and ADAAA, 42 U.S.C. §12112(a), prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

38.    At all times material to this action, KENNEDY suffered from a chronic kidney disorder and/or other medical conditions which affected Plaintiff's urinary/renal and cardiovascular systems and which manifested physical problems during KENNEDY's employment with FIRSTSERVICE RESIDENTIAL including but not necessarily limited to Plaintiff experiencing chest pain, high blood pressure, severe headaches, and problems with the functioning of KENNEDY's kidneys

39.    At all times material to this action, KENNEDY suffered from one or more "physical impairments" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(h)(1), as a result of a chronic kidney disorder and/or other physiological disorders or conditions which affected (a) KENNEDY's urinary/renal and cardiovascular systems; and (b) one or more of KENNEDY's major bodily functions, including but not necessarily limited to KENNEDY's kidneys.

40.     At all times material to this action, KENNEDY was substantially limited in one or more "major life activities" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(i), including but not necessarily limited to breathing, as well as the operation of one or more of Plaintiff's kidneys and major bodily functions including but not necessarily limited to functions of his urinary/renal and cardiovascular systems.

41.     At all times material to this action, KENNEDY was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. § 12102(1), because Plaintiff (a) suffered physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by FIRSTSERVICE RESIDENTIAL as a person with such impairments.

42.     At all times material to this action, KENNEDY had to endure substantial limitations as a result of Plaintiff's chronic kidney disorder and related medical conditions within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(j), because KENNEDY's conditions substantially limited Plaintiff's ability to perform one or more major life activities—including but not necessarily limited to, breathing, and the functioning of KENNEDY's kidneys—as compared to most people in the general population.

43.     At all times material to this action, KENNEDY has been "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(A), because KENNEDY's chronic kidney disorder and related medical conditions are actual physical impairments that substantially limit one or more of KENNEDY's major life activities.

44.     In addition, at all times material to this action, KENNEDY has also been "disabled" within the meaning of the ADA and ADAAA, 42 U.S.C. §12102(1)(C), because KENNEDY was regarded by FIRSTSERVICE RESIDENTIAL as having a physical impairment that substantially

limited one or more of his major life activities as a result of KENNEDY's kidney disorder and related medical conditions.

45.     At all times material to this action, KENNEDY was a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of his job as an "Overnight Operations Manager" for FIRSTSERVICE RESIDENTIAL between approximately August 2018 and January 2020 with or without reasonable accommodation by Defendants.

46.     At all times material to this action, KENNEDY was a "qualified individual with a disability" within the meaning of the ADA and ADAAA, 29 C.F.R. §1630.2(m) and 42 U.S.C. §12111(8), because KENNEDY possessed the requisite skill and experience to carry out his duties for FIRSTSERVICE RESIDENTIAL between approximately August 2018 and January 2020, and KENNEDY likewise was capable of performing the essential functions of his job despite KENNEDY's disability, with or without reasonable accommodation(s) by FIRSTSERVICE RESIDENTIAL.

47.     Further, KENNEDY was also qualified for his job with FIRSTSERVICE RESIDENTIAL between approximately August 2018 and January 2020 within the meaning of the ADA and ADAAA, 42 U.S.C. §12111(8) & (9), even in the face of the impact of KENNEDY's chronic kidney disorder and medical conditions because FIRSTSERVICE RESIDENTIAL could have and should have provided KENNEDY with reasonable accommodation(s) including but not limited to time off and/or a modified work schedule because of Plaintiff's medical conditions.

48.     On multiple occasions between approximately August 2018 and January 2020, FIRSTSERVICE RESIDENTIAL subjected KENNEDY to disparate treatment and discrimination in violation of 42 U.S.C. §12112 which was motivated by KENNEDY's disability and Defendant

discriminated against KENNEDY because of his disability in violation of 42 U.S.C. §12112, including but by FIRSTSERVICE RESIDENTIAL, *inter alia*: (a) harassing KENNEDY because of his disability/handicap; (b) disciplining Plaintiff in approximately late April 2019 for the asserted reasons that Plaintiff (i) engaged in unprofessional or disrespectful conduct; and (ii) was under the influence of alcohol at work; (c) denying KENNEDY's request for a reasonable accommodation for Plaintiff's disability/handicap; and (d) terminating KENNEDY's employment in January 2020 based upon false and/or pretextual grounds because of Plaintiff's actual or perceived disability.

49.     FIRSTSERVICE RESIDENTIAL subjected KENNEDY to disparate treatment and discrimination in January 2020 in violation of 42 U.S.C. §12112, which disparate treatment and discrimination was motivated by KENNEDY's disability, and Defendants unlawfully terminated KENNEDY's employment in January 2020 because of KENNEDY's actual and/or perceived disability, in violation of 42 U.S.C. §12112(a).

50.     The reasons proffered by FIRSTSERVICE RESIDENTIAL in January 2020 for terminating KENNEDY's employment were false and a pretext for discrimination against KENNEDY because of his actual or perceived disability in violation of 42 U.S.C. §12112(a).

51.     KENNEDY's actual and/or perceived disability was a motivating factor in FIRSTSERVICE RESIDENTIAL's decision to terminate KENNEDY's employment in January 2020, in violation of 42 U.S.C. §12112.

52.     FIRSTSERVICE RESIDENTIAL knowingly and willfully engaged in conduct prohibited by the ADA and ADAAA against KENNEDY because of his disability so as to discourage, dissuade and/or otherwise dishearten KENNEDY.

53.     FIRSTSERVICE RESIDENTIAL's violations of the ADA and ADAAA were intentional and were done with malice or reckless indifference to KENNEDY's rights guaranteed under the laws of the United States.

54.     KENNEDY has suffered and continues to suffer loss of earnings, emotional distress, loss of self-esteem and other injuries as a direct result of FIRSTSERVICE RESIDENTIAL's violations of the ADA and ADAAA.

55.     KENNEDY has retained the undersigned counsel to represent him in this action and pursuant to 42 U.S.C. §12205, KENNEDY is entitled to recover all reasonable attorneys' fees and costs from FIRSTSERVICE RESIDENTIAL.

WHEREFORE, Plaintiff, JERMAINE KENNEDY, demands judgment against Defendants, jointly and severally, FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

## COUNT II
## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

Plaintiff, JERMAINE KENNEDY, reasserts and reaffirms the allegations of Paragraphs 1 through 36 as if fully set forth herein and further states that this is an action against FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC. for Retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. §12203, as amended through the ADA Amendments Act of 2008, P.L. 110-325, § 2, 122 Stat. 3553.

56.     The Americans with Disabilities, ADA and ADAAA, 42 U.S.C. §12203(a), provides that: "No person shall discriminate against any individual because such individual has

opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter."

57.     Similarly, the ADA and ADAAA also provide, 42 U.S.C. §12203(b), that it shall "be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or an account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

58.     At all times material to this action, KENNEDY was an individual with a "disability" as defined by the ADA and ADAAA, 42 U.S.C. § 12102(1), because Plaintiff (a) suffered physical impairments that substantially limited one or more major life activities; (b) had a record of such impairments; and/or (c) was regarded by FIRSTSERVICE RESIDENTIAL as a person with such impairments.

59.     KENNEDY was at all times material to this action a "qualified individual" as that term is defined by the ADA and ADAAA, 42 U.S.C. §12111(8), because Plaintiff was able to satisfactorily perform the essential functions of his job as an "Overnight Operations Manager" for FIRSTSERVICE RESIDENTIAL between approximately August 2018 and January 2020 with or without reasonable accommodation.

60.     KENNEDY engaged in statutorily protected activity under the ADA and ADAAA on multiple occasions between approximately January 1, 2020 and January 7, 2020 by, *inter alia*, KENNEDY exercising or attempting to exercise or enjoy his rights under the ADA, including but not limited to: (a) Plaintiff repeatedly communicating to Defendants' management between January 1, 2020 and January 7, 2020 the reasons Plaintiff was absent from work because of his

chronic kidney disorder and surgery; (b) Plaintiff requesting Defendants provide KENNEDY with medical leave in January 2020 because of Plaintiff's chronic kidney disorder and surgery.

61.     FIRSTSERVICE RESIDENTIAL subjected KENNEDY to adverse employment actions including but not necessarily limited to: (a) denying Plaintiff time off for his disability and surgery in January 2020; (b) terminating KENNEDY's employment in January 2020 based upon discriminatory and/or pretextual grounds because of Plaintiff seeking medical leave for his disability and Plaintiff's good faith objections to Defendants' management about discrimination because of an actual or perceived disability, all because KENNEDY engaged in statutorily protected activity under the ADA and ADAAA.

62.     FIRSTSERVICE RESIDENTIAL's retaliatory actions against KENNEDY constitute violations of the ADA and ADAAA, which prohibits employers from discriminating against an individual because he has opposed any act or practice made unlawful under the ADA/ADAAA, 42 U.S.C. §12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADA/ADAAA on account of him having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. §12203(b).

63.     FIRSTSERVICE RESIDENTIAL's termination of KENNEDY's employment in January 2020 was unlawful retaliation in violation of 42 U.S.C. §12203 because of Plaintiff seeking medical leave under the ADA and Plaintiff's good faith objections to and complaints about FIRSTSERVICE RESIDENTIAL's disparate treatment and disability discrimination, in violation of the ADA.

64.     The fact that KENNEDY engaged in activity protected by the ADA was a motivating factor in FIRSTSERVICE RESIDENTIAL's termination of Plaintiff's employment in January 2020, in violation of 42 U.S.C. §12203.

65.     The reasons proffered by FIRSTSERVICE RESIDENTIAL in January 2020 for terminating KENNEDY's employment were a pretext for unlawful retaliation against KENNEDY in violation of 42 U.S.C. §12203.

66.     As a direct and proximate result of FIRSTSERVICE RESIDENTIAL's unlawful retaliation against KENNEDY in violation of the ADA, Plaintiff has suffered damages and has been deprived of job-related economic benefits, all in amounts to be established at trial.

67.     FIRSTSERVICE RESIDENTIAL's actions have caused KENNEDY to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

68.     FIRSTSERVICE RESIDENTIAL's actions were undertaken intentionally, willfully, and maliciously with respect to, or with malice and/or reckless disregard for, KENNEDY's federally protected rights under the ADA, as a result of which Plaintiff is entitled to punitive damages from Defendants.

69.     Pursuant to 42 U.S.C. §12205, KENNEDY is entitled to recover all reasonable attorneys' fees and costs from FIRSTSERVICE RESIDENTIAL as a result of Defendants' violations of the ADA's anti-retaliation provisions.

WHEREFORE, Plaintiff, JERMAINE KENNEDY demands judgment against Defendants, jointly and severally, FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC., for back pay, employment benefits, other compensation including bonuses, compensatory damages, punitive damages, equitable relief including but not

limited to reinstatement and/or front pay, injunctive relief, interest, attorneys' fees, costs, expert fees and such other and further relief as this Honorable Court deems proper.

**COUNT III**
**INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

Plaintiff, JERMAINE KENNEDY, reasserts and reaffirms the allegations of Paragraphs 1 through 36 and further states that this is an action against FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC. for Interference in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

70.     The FMLA, 29 U.S.C. §2615(a)(1), provides that it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under 29 U.S.C. §2611, *et seq*.

71.     Under the FMLA, when the timing of an employee's need for FMLA leave is not foreseeable, an employee is only required provide notice to his employer "as soon as practicable under the facts and circumstances of the particular case."  29 CFR §825.303(a).

72.     Similarly, where an emergency condition requires leave because of an FMLA-qualifying reason, written advance notice pursuant to an employer's standard rules and procedures is not required when medical leave is involved.  29 CFR §825.303(c).

73.     KENNEDY provided FIRSTSERVICE RESIDENTIAL in January 2020 with sufficient facts and notice of his need for medical leave due to Plaintiff's serious health conditions.

74.     On multiple occasions between approximately September 2019 and November 2019, as well as between January 1, 2020 and January 7, 2020, KENNEDY exercised, and/or attempted to exercise, rights guaranteed under and protected by the FMLA, 29 U.S.C. §§2612(a)(1)(D).

16

75.     KENNEDY's chronic kidney disorder and related medical conditions constitute one or more "serious health conditions" within the meaning of the FMLA, 29 U.S.C. §2612(a)(1)(D).

76.     By exercising and/or attempting to exercise his rights under the FMLA on multiple occasions with FIRSTSERVICE RESIDENTIAL between January 1, 2020 and January 7, 2020— as well as KENNEDY's prior medical leave between approximately September 2019 and November 2019— including but not necessarily limited to KENNEDY's right to medical leave under the FMLA, KENNEDY engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq*., triggering the protections of the FMLA, specifically including but not limited to KENNEDY's rights pursuant to: (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of leave because of a "serious health condition"; and (b) 29 U.S.C. §2614 to be restored to his position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon his return from leave.

77.     FIRSTSERVICE RESIDENTIAL interfered with KENNEDY's right to take medical leave in January 2020 under the FMLA for one or more serious health conditions when Defendant had knowledge of KENNEDY's exercise and/or attempted exercise of rights guaranteed under and protected by the FMLA, in violation of 29 U.S.C. 2615(a)(1).

78.     Moreover, FIRSTSERVICE RESIDENTIAL disregarded Defendants' obligations as an employer under the FMLA by, *inter alia*, failing to inform KENNEDY that his medically-related absences between approximately January 1, 2020 and January 7, 2020 were, or may have been, for an FMLA-qualifying reason, in violation of 29 C.F.R. §825.300(b), which regulation requires that when an employee requests FMLA leave, or when an employer acquires knowledge that an employee's leave may be for an FMLA qualifying reason, the employer must notify the

employee of the employee's eligibility to take FMLA leave within five (5) business days, including providing the employee with a formal notice indicating, *inter alia*, whether the employee is eligible for FMLA leave as defined by the law.

79.     On January 7, 2020, FIRSTSERVICE RESIDENTIAL interfered with KENNEDY's rights under the FMLA when FIRSTSERVICE RESIDENTIAL terminated KENNEDY's employment in violation of 29 U.S.C. §2612(a)(1)(D) for a reason which was discriminatory and pretextual and at a point when KENNEDY had not exhausted twelve (12) workweeks of medical leave which KENNEDY was entitled to under the FMLA because of his "serious health conditions."

80.     As a result of FIRSTSERVICE RESIDENTIAL's violations of KENNEDY's rights protected by the FMLA, KENNEDY has suffered damages including but not necessarily limited to unpaid wages and lost employment benefits.

81.     FIRSTSERVICE RESIDENTIAL's violations of the FMLA were willful, intentional and not done in good faith.

82.     Pursuant to 29 U.S.C. §2617(a)(1)(iii), KENNEDY is entitled to an award of liquidated damages from FIRSTSERVICE RESIDENTIAL equal to the sum of the amount of all salary, wages, bonuses, employment benefits, and other compensation denied to or lost by KENNEDY by reason of FIRSTSERVICE RESIDENTIAL's violations of 29 U.S.C. §2615(a)(1).

83.     Pursuant to 29 U.S.C. §2617(a)(3), KENNEDY is entitled to all reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action to be paid by FIRSTSERVICE RESIDENTIAL.

WHEREFORE, Plaintiff, JERMAINE KENNEDY, demands judgment against Defendants, jointly and severally, FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE

RESIDENTIAL FLORIDA, INC., for back pay, employment benefits, other compensation including bonuses, liquidated damages, equitable relief including but not limited to front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

**COUNT IV**
**RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

Plaintiff, JERMAINE KENNEDY, reasserts and reaffirms the allegations of Paragraphs 1 through 36 and further states that this is an action against FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC., for Retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

84.     The FMLA, 29 U.S.C. §2601 *et seq*., prohibits an employer from retaliating against an eligible employee who has (a) obtained and/or attempted to obtain the benefits and protections of the FMLA; or (b) otherwise triggered the protections of, or engaged in activity protected by, the FMLA.   In addition, 29 U.S.C. §2615 prohibits an employer from discharging or in any other manner discriminating against any individual for opposing any practice made unlawful by the Act.

85.     On multiple occasions between January 1, 2020 and January 7, 2020, as well as between approximately September 2019 and November 2019, KENNEDY exercised, and/or attempted to exercise, his rights under the FMLA in accordance with 29 U.S.C. §§2612(a)(1)(D).

86.     By exercising and/or attempting to exercise his rights under the FMLA on multiple occasions during his employment with FIRSTSERVICE RESIDENTIAL between approximately September 2019 and January 2020, including but not necessarily limited to KENNEDY's right to medical leave under the FMLA, KENNEDY engaged in activity protected by the FMLA, 29 U.S.C. §2611 *et seq*., triggering the protections of the FMLA, specifically including but not limited to KENNEDY's rights pursuant to:  (a) 29 U.S.C. §2612 to take up to twelve (12) workweeks of

leave because of a "serious health condition"; and (b) 29 U.S.C. §2614 to be restored to his position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment upon his return from leave.

87.     KENNEDY communicated with multiple members of FIRSTSERVICE RESIDENTIAL's management on numerous occasions between January 1, 2020 and January 7, 2020 about KENNEDY's medical-related absences from work and KENNEDY's surgery because of Plaintiff's chronic kidney disorder and serious health conditions.

88.     FIRSTSERVICE RESIDENTIAL was fully aware and/or should have been aware in January 2020 of its legal obligations as an employer covered by the FMLA.

89.     On January 7, 2020, FIRSTSERVICE RESIDENTIAL retaliated against KENNEDY and unlawfully terminated Plaintiff's employment in violation of 29 U.S.C. §2615(a)(1) when Defendant terminated FIRSTSERVICE RESIDENTIAL for a reason which was false and/or pretextual.

90.     A motivating factor behind FIRSTSERVICE RESIDENTIAL's decision to terminate KENNEDY's employment was retaliation against KENNEDY because Plaintiff:  (a) requested time off from work on one or more occasions between approximately September 2019 and January 2020 for FMLA-qualifying reasons; (b) was absent from his work for FIRSTSERVICE RESIDENTIAL on more than three (3) days because of Plaintiff's own serious health conditions; and (c) FIRSTSERVICE RESIDENTIAL's knowledge that KENNEDY sought and/or triggered the protections of the FMLA, including the benefits and protections associated with medical leave and job reinstatement guaranteed by the FMLA, all in violation of 29 U.S.C. §2615(a)(1).

91.     The reasons proffered by FIRSTSERVICE RESIDENTIAL to KENNEDY for terminating Plaintiff's employment in January 2020 were discriminatory and were a pretext for Defendants' violations of KENNEDY's rights under the FMLA.

92.     By subjecting KENNEDY to retaliation and terminating KENNEDY's employment on January 7, 2020 because Plaintiff exercised and/or attempted to exercise his rights under the FMLA, as guaranteed by, *inter alia*, 29 U.S.C. §§2612(a)(1)(D) and (b), FIRSTSERVICE RESIDENTIAL intentionally retaliated against KENNEDY in violation of the FMLA.

93.     As a result of FIRSTSERVICE RESIDENTIAL's violations of KENNEDY's rights protected by the FMLA, KENNEDY has suffered damages including but not necessarily limited to unpaid wages and lost employment benefits.

94.     FIRSTSERVICE RESIDENTIAL's violations of the FMLA were willful, intentional and not done in good faith.

95.     Pursuant to 29 U.S.C. §2617(a)(1)(iii), KENNEDY is entitled to an award of liquidated damages from FIRSTSERVICE RESIDENTIAL equal to the sum of the amount of all wages, employment benefits, and other compensation denied to or lost by KENNEDY by reason of Defendants' violations of 29 U.S.C. §2615(a)(1).

96.     Pursuant to 29 U.S.C. §2617(a)(3), KENNEDY is entitled to all reasonable attorneys' fees, expert witness fees, and other costs of the action to be paid by FIRSTSERVICE RESIDENTIAL.

WHEREFORE, Plaintiff, JERMAINE KENNEDY, demands judgment against Defendants, jointly and severally, FIRSTSERVICE RESIDENTIAL, INC. and FIRSTSERVICE RESIDENTIAL FLORIDA, INC., for back pay, employment benefits, other compensation

including bonuses, compensatory damages, liquidated damages, equitable relief including but not limited to reinstatement and/or front pay, interest, attorneys' fees, costs and such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

JERMAINE KENNEDY demands trial by jury on all issues so triable.

Dated: April 23, 2020          Respectfully submitted,

              By:     **s/KEITH M. STERN**
                    Keith M. Stern, Esquire
                    Florida Bar No. 321000
                    E-mail:  employlaw@keithstern.com
                    LAW OFFICE OF KEITH M. STERN, P.A.
                    80 S.W. 8th Street, Suite 2000
                    Miami, Florida 33132
                    Telephone:  (305) 901-1379
                    Facsimile:  (561) 288-9031
                    Attorneys for Plaintiff

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |

| | Florida Commission on Human Relations | and EEOC |
|---|---|---|
| | State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Jermaine Kennedy | (305) 850-1121 | 7/20/82 |

| Street Address | City, State and ZIP Code | |
|---|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| FirstService Residential, Inc. | 100+ | (954) 926-2921 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1855 Griffin Road, Suite A-330 | Dania Beach, Florida 33004 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| FirstService Residential Florida, Inc. | 100+ | (954) 925-2800 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 2950 North 28th Terrace | Hollywood, Florida 33020 | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest          Latest          Jan 7, 2020 |
| ☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

In approximately January 2018 I was hired by Respondents as an "Overnight Operations Manager." In or around August 2019, I was injured in a car accident and I was subsequently out of work on medical leave under the Family and Medical Leave Act during part of September 2019 and all of October 2019 before returning to work in around November 2019.

Between approximately January 2018 and early January 2020, I was assigned by Respondents to work the shift between approximately 10:45 pm and 7:15 am as the "Overnight Operations Manager" at the "Biscayne Beach Condominium" located at 2900 NE 7th Avenue, Miami, Florida 33137, with my primary duties consisting of walking the building/garage and common areas for any problems to be reported and addressed such as, for example, water leaks and noise complaints.

On January 1, 2020, after I began working the prior evening, I went to a hospital emergency room because of a medical problem and my chronic kidney condition. I promptly notified Respondents on January 1st that I was at the hospital because of a medical problem. After I was admitted to the hospital, I also informed Respondents that I was unable to work for a few days because of my medical condition. I was discharged from the hospital on January 3, 2020, but I began experiencing problems including chest pain. As a result, I went to a hospital emergency room in the evening on January 5, 2020. On the morning of January 6, 2020, I notified Respondents that I was again hospitalized because of my continuing medical problems. My supervisor and Respondents' Operations Manager, Timothy Lee, told me on January 6th "not to worry" about my job because "the job will be here," while Mr. Lee also told me to just "get well."

On January 7, 2020, I notified Mr. Lee that I would be undergoing surgery because of my kidney disorder and I would need to miss a few days of work. When I asked Mr. Lee on January 7th about taking medical leave--or any other type of leave--Mr. Lee responded by that he needed to check with Respondents' Association Property Manager, Sean Estevez. However, a few hours later on January 7, 2020, Mr. Estevez called me and notified me that I was fired because I had previously been out on FMLA leave in 2019 and I was now sick again, as part of which Mr. Estevez said that Respondents needed "someone we can rely on."

I believe Respondents failed to accommodate one or more actual or perceived disabilities/handicaps and Respondents subjected me to disparate treatment, discrimination, and retaliation based upon one or more actual or perceived disabilities/handicaps in violation of the Americans with Disabilities Act (ADA) and the Florida Civil Rights Act (FCRA).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 02/14/2020                                   Jermaine Kennedy (Feb 14, 2020) Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# EXHIBIT B

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  **Jermaine Kennedy**
**10145 S.W. 171 Street**
**Miami, FL 33157**

From:  **Miami District Office**
**Miami Tower, 100 S E 2nd Street**
**Suite 1500**
**Miami, FL 33131**

☐  On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2020-02551** | **Latoya Allen, Investigator** | **(786) 648-5838** |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          April 17, 2020
**Michael J. Farrell,**                           (Date Mailed)
**District Director**

Enclosures(s)

CC          **Respondent's Legal Representative**          **Charging Party's Legal Representative**

**First Service Residential Florida, Inc.**          **Keith Stern, Esq.**
**c/o Andrew Rodman, Esq.**                           **LAW OFFICE OF KEITH M. STERN, P.A.**
**Stearns Weaver Miller et al.**                      **80 S.W. 8th Street, Suite 2000**
**150 W. Flagler Street, Suite 2200**                 **Miami, FL 33130**
**Miami, FL 33130**

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 — *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

> ➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
> ➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
> ➤ **Only one** major life activity need be substantially limited.
> ➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
> ➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
> ➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
> ➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
> ➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
> ➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
> ➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.